**Delia C. GRIEGO, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary, Department of Health and Human Services, Defendant–Appellee.**

No. 91–1018

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Sept. 9, 1991.

---

Gary J. Martone, Albuquerque, N.M., for plaintiff-appellant.

Marvin Collins, U.S. Atty., Joanna Tate, Asst. Regional Counsel, Karen J. Sharp, Dallas, Tex., for defendant-appellee.

Before JOLLY, HIGGINBOTHAM, and JONES, Circuit Judges.

PER CURIAM:

Delia C. Griego challenges a decision by the Secretary of Health and Human Services to terminate her disability insurance benefits. We find substantial evidence in support of the Secretary's decision and affirm.

### I.

Delia C. Griego injured her back while working in 1977. She subsequently filed an application for disability insurance benefits under Title II of the Social Security Act. *See* 42 U.S.C. § 401 et seq. On January 23, 1978, the Secretary of Health and Human Resources found Griego disabled and awarded her disability benefits with an onset date of January 20, 1977. She underwent a lumbar spine fusion operation on January 31, 1978, and three related operations in 1979 and 1980. The Secretary temporarily terminated her disability benefits in February of 1979 but reversed the determination upon finding that Griego required further surgery.

The instant termination proceeding began in 1982. On February 16, 1982, the Secretary determined that Griego's condition had improved and that her disability had eased in January of 1982. She requested a hearing, and it was held on March 15, 1984. The ALJ issued an opinion recommending termination on April 30, 1984. A second hearing was held over four years later on November 1, 1988. On July 11, 1989, the ALJ that we now review found that Griego's disability ceased on November 24, 1986.

The Appeals Council denied review, and Griego appealed to the district court below. The district court found substantial evidence in support of the Secretary's decision. Griego now appeals to this court. In reviewing her claims, we consider whether the record contains substantial evidence in support of the ALJ's conclusions and whether the ALJ applied the proper legal standards in evaluating the evidence. *Reyes v. Sullivan*, 915 F.2d 151, 153 (5th Cir.1990); *Pearson v. Bowen*, 866 F.2d 809, 810 (5th Cir.1989).

### II.

A. *The Benefits Review Act of 1984 and the ALJ's opinion:*

In the Benefits Review Act of 1984, 42 U.S.C. § 423(f), Congress established specific standards for the termination of disability benefits. Pursuant to the new standards, the Secretary may terminate disability benefits if substantial evidence demonstrates that:

(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and

(B) the individual is now able to engage in substantial gainful activity; ...

§ 423(f)(1).

The first part of the evaluation process, then, focuses on medical improvement. The implementing regulations define · a medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s)." And a medical improvement is only related to an individual's ability to work "if there has been a decrease in the severity ... of the impairment(s) present at the time of the most recent favorable medical decision *and* an increase in your functional capacity to do basic work activities." 20 C.F.R. § 404.1594(b)(3).

The second part of the evaluation process relates to ability to engage in substantial gainful activity. Here the implementing regulations incorporate many of the standards set forth in the regulations governing initial disability determinations. *See* 20 C.F.R. §§ 404.1594(b)(5) and (f)(7). The difference, of course, is that the ultimate burden of proof lies with the Secretary in termination proceedings. In evaluating ability to engage in substantial gainful activity, the Secretary considers, first, whether the claimant can perform past relevant work and, if not, whether the claimant can perform other work. 20 C.F.R. §§ 404.-1594(f)(7) and (f)(8).[1]

The ALJ evaluating Griego's case first examined the extensive medical evidence in the record. He found that the medical reports established status post lumbar fusion, times two, and depression. He further found substantial evidence of medical improvement related to ability to perform work. He concluded that Griego had the ability to perform sedentary work as of November 24, 1986, the date that Dr. Herbertson, then Griego's treating physician, found a full range of motion in her back and general improvement. He also cited to other medical reports, the opinions of her physicians, her reported daily activities, and the medications that she was then taking. He concluded that her residual functional capacity was consistent with her past relevant work as a telephone solicitor and receptionist.

The ALJ found no mental impairments that materially affected her ability to perform her past relevant work. He particularly relied on a March 31, 1988, report by Dr. Pennal, a board certified psychiatrist. Although a neurologist who examined Griego the same month diagnosed depression, Dr. Pennal found only suggestions of hypochondriacal neurosis.

The ALJ expressly considered Griego's subjective complaints of pain. He discounted her complaints, however, based on evi-

---

1. The implementing regulations specifically set forth an eight-step sequential process for evaluating possible terminations:

(1) Is the claimant engaged in substantial gainful activity? (If so, the disability has ended.)

(2) If not, does the claimant have an impairment of combination of impairments which meets or equals the severity of an impairment listed in Appendix 1? (If so, the disability is continuing.)

(3) If not, has there been medical improvement?

(4) If there has been medical improvement, is it related to the claimant's ability to do work?

(5) If there has been no medical improvement, or if the medical improvement is not related to the claimant's ability to do work, is one of the exceptions to medical improvement applicable? (If not, the disability is continuing.)

(6) If there has been medical improvement related to the claimant's ability to do work, or if one of the first group of exceptions is applicable, is the combination of impairments severe? (If not, the disability has ended.)

(7) If so, is the claimant able to engage in past relevant work? (If so, the disability has ended.)

(8) If not, is the claimant able to perform other substantial gainful activity?

20 C.F.R. § 404.1594(f). It remains to be seen whether courts reviewing termination decisions will adopt a shifting burden of proof similar to that employed in reviewing initial disability determinations. *See Fields v. Bowen,* 805 F.2d 1168, 1169–70 (5th Cir.1986); *Fruge v. Harris,* 631 F.2d 1244, 1246 (5th Cir.1980). Such a shifting burden could run contrary to § 423(f), as the statute clearly places the ultimate burden of proof on the Secretary.

dence that she took only non-aspirin pain reliever, attended a one and one-half hour Bible study once a week, worked on her GED for a short time, and exercised at the YMCA. The ALJ also noted that, while she stated at the hearing that someone else did her shopping, she told one of her doctors that she shopped for groceries herself. He concluded that neither the medical evidence nor Griego's own testimony established that her "ability to function has been so severely impaired by pain, since November 24, 1986, as to preclude sedentary work."

### B. *Evidence of medical improvement:*

Griego challenges both the ALJ's findings of medical improvement and his findings of ability to perform past relevant work. She first contends that the record does not support the finding of medical improvement. She complains that the ALJ gave insufficient weight to some of the medical reports, particularly the reports of Drs. Moon, Fong, Peters, and Snyder, and too much weight to her daily activities and her decision to forego strong pain-killing medication.

 It was within the discretion of the ALJ to determine the credibility of the various medical reports in the record, and we find substantial evidence in support of his conclusions. *See Moore v. Sullivan,* 919 F.2d 901, 905 (5th Cir.1990). We find it significant that Dr. Moon last examined Griego in May of 1984, more than two years prior to the cessation of her disability. Dr. Fong's report lends little support to Griego; it merely notes her own complaints of pain. And Dr. Peters is a chiropractor; the relevant regulations accord less weight to chiropractors than to medical doctors. *See* 20 C.F.R. § 404.1513(e). By contrast, the reports of Dr. Herbertson, Griego's treating physician from August of 1986 through October of 1987, lend substantial support to the ALJ's conclusions.[2] As to the evidence of mental impairment, we find no error in the ALJ's decision to weight the report of Dr. Pennal, a psychiatrist, over the report of Dr. Snyder, a neurologist.

 It was also within the discretion of the ALJ to discount Griego's complaints of pain based on the medical reports combined with her daily activities and her decision to forego certain medications. While exclusive reliance on daily activities or a decision to forego a particular medication might concern us, we find no error in the consideration of these factors in conjunction with the medical reports. *See Reyes v. Sullivan,* 915 F.2d 151, 155 (5th Cir.1990). In the cases cited by Griego, the ALJ relied on these factors in discrediting complaints of pain despite substantial contrary medical evidence. *See Brooks v. Sullivan,* 882 F.2d 1375, 1378–79 (8th Cir.1989); *Nelson v. Bowen,* 882 F.2d 45 (2nd Cir.1989). Here, by contrast, substantial medical evi-

---

**2.** Griego first visited Dr. Herbertson on August 13, 1986, and complained of pain in her back and right leg and headaches. He found some tenderness in her back and neck, but neurological tests of her upper and lower extremities and a straight leg raising test were normal. He also found full range of motion in her arms and shoulders. He concluded that she would continue to have intermittent pain problems but recommended that she stop taking Tylenol with codeine and switch to Wygesic.

She complained of pain on her second visit, but on her third visit, on October 2, 1986, Dr. Herbertson noted that she was experiencing less back pain though still having headaches. On her fourth visit, on October 29, 1986, he again noted that she was "doing somewhat better" though she was experiencing soreness in the lower back.

The ALJ concluded that Griego's disability had terminated by the time of her sixth visit on November 24, 1986. Dr. Herbertson noted that she complained of pain in her back, headaches, and general achiness. Although he noted some generalized tenderness, he found full range of motion in her back. Her neurological tests were also normal. He recommended exercise.

Griego's next three visits to Dr. Herbertson reflect similar complaints and similar diagnoses. She consistently complained of pain in her back, and he found some tenderness but otherwise no changes. On her tenth visit, on May 19, 1987, he again found tenderness, but neurological tests and a straight leg raising test were normal. He recommended that the best approach would be weight loss and exercise rather than medication.

Medical reports from three subsequent visits to Dr. Herbertson are also in the record. On the last of these visits, on October 21, 1987, Dr. Herbertson noted that Griego was "doing much better. She is continuing to lose weight and is having much less pain."

dence supports the ALJ's conclusions. In fact, Dr. Herbertson recommended that the "best approach" for Griego's pain would be more exercise and less medication.

### C. *Evidence of ability to perform substantial gainful activity:*

Griego also contends that the record does not support the finding that she is able to perform her past relevant work as a telephone solicitor and receptionist. She believes that the ALJ "merely concluded that the record lacked evidence that [she] could not perform sedentary work" and that his reasoning thus improperly shifted the burden of proof to her. While we agree with Griego that the burden was on the Secretary, we find no misapplication in the ALJ's opinion. He affirmatively cited the medical evidence, the opinions of her physicians, Griego's daily activities, and the medications that she was then taking.

In a related argument, Griego contends that the ALJ relied only on the reports of non-examining doctors in concluding that she could perform her past relevant work. It is clear from his opinion, however, that he gave substantial weight to the reports of Dr. Herbertson.

The opinion of the district court is AFFIRMED.