McCoy v. HHS                          CV-93-557-B   03/08/95

UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE


Sandra McCoy

     v.                                       No. 93-557-B

Secretary of Health and Human Services


                           **O R D E R**

     An Administrative Law Judge ("ALJ") awarded Susan McCoy

supplemental security income ("SSI") and disability benefits for

a period of disability running from February 13, 1991 until March

17, 1992.  However, the ALJ refused McCoy's request for

additional benefits because she concluded that McCoy's condition

had improved to the point that she ceased to be disabled after

March 17.  McCoy challenges the ALJ's decision to terminate her

benefits.


                    I.  **BACKGROUND**

     McCoy injured her back at work on February 12, 1991, while

lifting a patient in her job as a teacher's assistant at a school

for developmentally disabled students.  The next day she was

treated by Dr. Jean Smith, whose office notes state that McCoy's

spine was "without tenderness or spasm or swelling," that her

range of motion had decreased due to "left paralumbar muscle pain," and that she had a mild left lumbar strain. Dr. Smith concluded that McCoy had a "musculoskeletal strain in the left lumbar region," prescribed bed rest with medication, and referred her to physical therapy. Because McCoy's back pain appeared to be improving, Dr. Smith authorized her to return to work in mid-March. However, McCoy's attempt to return to work proved unsuccessful because working caused her symptoms to recur.

McCoy was referred to a neurologist, who found no neurological problem, and an orthopedist, who concluded that she had suffered a muscle sprain. Her doctors' notes for March and April generally show that she continued to complain of lower back pain which was treated with medication, rest, and physical therapy. Examination generally showed that she had full range of motion and x-rays did not indicate injury to her spine. The doctors diagnosed muscle sprain in her back and then in her shoulder. They recommended that she stay out of work temporarily, anticipating that she would return by May. However, by April, McCoy was experiencing more problems, including back spasms, and her physical therapy treatments ended when she lost insurance coverage.

2

McCoy testified at her November 5, 1992, hearing before the ALJ that she had been injured in a minor car accident in May 1991 and treated in the emergency room the next day. She contended that the accident caused her to suffer headaches, numbness in her face, and neck pain which required her to wear a soft collar. She also stated that the accident set back her progress in resolving her lower back injury.

McCoy was examined in November 1991 by Dr. Howard Taylor, an orthopedic surgeon, for a state disability determination. Dr. Taylor noted that McCoy reported intermittent pain in her back radiating down her left arm that caused her difficulty in sitting, walking, and carrying. Based on his examination, Dr. Taylor found no objective evidence to support McCoy's claimed limitations and concluded that she could engage in work-related activities of sitting, standing, walking, lifting, carrying, and bending. A residual functional capacity assessment ("RFC") prepared by Dr. Burton Nault on November 22, 1991, also noted no limitations on McCoy's exertional abilities and concluded that "[t]he claimant is considered currently capable of full work."

During this period, McCoy took classes three times a week at Notre Dame College. She attended the fifty-minute classes with accommodations that allowed her to stand, move around, or leave

3

to relieve back pain.

McCoy was next examined by Dr. Harry Morehead, a neurologist, on January 8, 1992.  He noted her account of pain in the left side of her back that radiated down her left arm, pain in her left knee, which was relieved by a knee brace, and improvement in her neck pain.  Dr. Morehead found in his examination that McCoy had "no focal neurological deficit" and that her history indicated that she had improved.  He prescribed medications and also planned to have her restart physical therapy.  He wrote, "I advised her regarding a change of vocation.  She is totally disabled at this time but the prognosis is still good."

Dr. Morehead saw McCoy again on February 6, 1992, for her continuing back and leg pain.  He noted, "The patient's low back findings are a bit better but she still has daily pain and is totally disabled. . . . I have advised her to consider employment that does not require heavy lifting or prolonged sitting.  She is, however, totally disabled at this time and will return in three months."  He referred her to physical therapy for treatment of her low back pain and scheduled an "MRI" test.  The MRI showed minor disc degenerative changes in her lower thoracic spine and in the left L5 - S1 facet joint, but no lumbar disc herniation.

4

McCoy began physical therapy with Gregory Silva on February 18, 1992. In his progress note to Dr. Morehead, Silva reported that McCoy's low back pain responded well to extension treatment, but that she was worse with flexion, particularly sitting for prolonged periods. On March 17, 1992, Silva stated that McCoy had made good progress and was "now at the point where she is quite in control of her symptoms. If she stretches often and watches her posture, she can keep herself feeling quite good." He indicated that McCoy would begin a period of self-treatment.

McCoy testified at the November 5, 1992, hearing that she was treated in a hospital emergency room in April 1992 because she could not move when she woke up one morning. After that episode, she claimed that she resumed wearing her soft collar until the heat of the summer made it uncomfortable. McCoy also claimed that she again experienced immobility upon waking in August 1992, and was treated at the emergency room. She testified that she resumed wearing her soft collar at that time.

Dr. Thomas Marks examined McCoy in September 1992 and prepared a "Report of Medical Findings" for the town of Derry for McCoy's application for town benefits. In the report, Dr. Marks stated his diagnosis as a cervical strain, and he gave September 8, 1992, as the date of her initial disability. He also

estimated that McCoy would be able to do selected work by December 1992 but could not give a date when she would be able to return to all types of work.

Penny Blanchard, a physical therapist, evaluated McCoy on September 24, 1992. She reported that McCoy's symptoms were constant neck pain, dizziness, headaches, and constant lightheadedness. She noted McCoy's poor posture, slightly limited range of motion, decreased flexibility, and decreased strength. She also wrote that McCoy said she could do all activities necessary for daily living but avoided strenuous household tasks. She recommended that McCoy use hot packs and ice for pain, follow a home exercise program for her neck, and continue physical therapy. Blanchard's treatment notes through October and early November 1992 indicate that McCoy's headaches became less frequent and that she was generally improving although lifting activities aggravated her neck condition and pushing her car caused a temporary recurrence of her back pain.

McCoy testified at the November 5, 1992, hearing that she continued to attend physical therapy three times a week and that the treatment helped her. She claimed that her headaches and dizzy spells had decreased significantly although both occurred occasionally, and her flexibility and range of motion in her neck

6

had increased. Although her back continued to cause pain requiring her to lie down intermittently during the day, McCoy noted some improvement because she could sit through forty-five minutes of a church service which she had been unable to do previously. She stated that she had some problems with stiffness and limited motion of her neck which was improving with physical therapy, that lifting a gallon of milk caused back pain, that she could sit comfortably for fifteen minutes and could stand comfortably for about a half an hour, and that she could occasionally walk a couple of blocks. She also testified that she used a lumbar roll for her back, a wedge-shaped pillow when lying down to relieve her back, and an indented pillow for her neck while sleeping.

McCoy was twenty-seven years old when she was injured in 1991. She is a high school graduate, holds an associate's degree in special education, and has further training and college courses. Before working as a teacher's assistant with developmentally disabled students for seven years, McCoy worked as a child care attendant and as teacher's aid.

McCoy applied for supplemental security income and disability insurance benefits on May 10, 1991. Her application and request for reconsideration were denied. A de novo hearing

7

was held on November 5, 1992, before an ALJ.  The evidentiary record was later reopened to receive additional medical records.

The ALJ decided that McCoy was disabled from February 13, 1991, until March 17, 1992, and that she was entitled to disability insurance benefits for a closed period beginning on February 13, 1991, and ending in May 1992, after the statutory period following resolution of her disability.  She referred McCoy to the administrator responsible for social security income benefits for the period of disability.  McCoy filed an appeal with the Appeals Council, which declined to review the ALJ's decision.  She then appealed to this court.

## II.  **STANDARD OF REVIEW**

After a final determination by the Secretary and upon request by a party, this court is authorized to review the pleadings and the transcript of the record of the proceeding, and enter a judgment affirming, modifying, or reversing the Secretary's decision.  42 U.S.C.A. § 405(g).  The court's review is limited in scope, however, as the Secretary's factual findings are conclusive if they are supported by substantial evidence. Id.; Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765,

8

769 (1st Cir. 1991). The Secretary is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicting evidence. Id. Therefore, the court must "'uphold the Secretary's findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Secretary's] conclusion.'" Id. (quoting Rodriguez v. Secretary of Health & Human Serv., 647 F.2d 218, 222 (1st Cir. 1981).

McCoy also seeks review of the Appeals Council decision not to review her case and submits additional evidence that was not before the ALJ, but was presented to the Appeals Council. When the Appeals Council exercised its discretion not to review McCoy's case, the decision rendered by the ALJ on March 26, 1992, became the final decision of the Secretary. 42 U.S.C.A. § 405(g); 20 C.F.R. §§ 404.981, 416.1476. Compare Grace v. Sullivan, 901 F.2d 660 (8th Cir. 1990) (holding that Appeals Council's substantive decision, which modified ALJ's decision, was the final decision of the Secretary and was the only decision subject to judicial review). Because this court has authority to review only final decisions of the Secretary, I lack jurisdiction to review the Appeals Council's discretionary administrative decision not to review McCoy's case. See Browning v. Sullivan,

858 F.2d 817, 822 (8th Cir. 1992). In addition, because the Appeals Council declined to review the ALJ's decision, only the administrative record presented to the ALJ, not additional evidence submitted to the Appeals Council, is reviewable here. See Eads v. Secretary of DHHS, 983 F.2d 815, 816-17 (7th Cir. 1993).[1] Accordingly, I review the administrative record before the ALJ to determine whether substantial evidence supports the Secretary's decision to terminate McCoy's disability benefits.

## III. DISCUSSION

The Secretary's regulations require her to follow an eight-step sequential analysis in making a determination to terminate a recipient's benefits. 20 C.F.R. §§ 404.1594(a), 416.994(b).[2] Although the ALJ's decision in the present case does not

_____

[1] I note that McCoy does not contend that this evidence qualifies as "new evidence" which would entitle her to have the ALJ consider the evidence on remand. See Evangelista v. Secretary of Health and Human Servs., 826 F.2d 136, 139 (1st Cir. 1987).

[2] The applicable regulations pertaining to disability benefits, 20 C.F.R. Part 404 are identical, or substantively identical, to those pertaining to supplemental security income, 20 C.F.R. Part 416. See Reagan v. Secretary of Heath and Human Servs., 877 F.2d 123, 124 (1st Cir. 1989). All regulations cited are from the 1992 edition of the Code of Federal Regulations that applied at the time of the hearing and the ALJ's decision.

reference the eight-step analysis, her findings generally track the steps, and provide a factual basis for review.

McCoy focuses her challenge on the ALJ's determination at steps three and four of the analysis that McCoy experienced "medical improvement"[3] after March 17, 1992, and that her medical improvement was related to her "ability to work."[4] 20 C.F.R. § 404.1594(F)(3)-(4). In seeking to terminate a recipient's benefits, the Secretary bears the burden of proving both issues. See <u>Glenn v. Shalala</u>, 21 F.3d 983, 987 (10th Cir. 1994); <u>Griego v. Sullivan</u>, 940 F.2d 942, 944 n.1 (5th Cir. 1991). Nevertheless, I must sustain the ALJ's decision to terminate McCoy's benefits if there is "substantial evidence" to support her determination. 42 U.S.C.A. § 423(F)(1).

---

[3] "Medical improvement is any decrease in the medical severity of your impairments which was present at the time of the most recent favorable medical decision that you were disabled or continue to be disabled." 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).

[4] "Medical improvement is related to your ability to work if there has been a decrease in the severity as defined by (b)(1) of this section of the impairment(s) present at the time of the most recent favorable medical decision <u>and</u> an increase in your functional capacity to do basic work activities as described in paragraph (b)(4) of this section." 20 C.F.R. §404.1594(b)(3).

11

## A. <u>Medical Improvement</u>

In determining that McCoy was entitled to benefits from February 13, 1991 until March 17, 1992, the ALJ chose to disregard evidence suggesting that McCoy was never disabled. Most prominently, the ALJ failed to credit a November 1991 report by Dr. Taylor and an RFC prepared by Dr. Nault during the same period which declared that McCoy was not disabled. Instead, she relied on subsequent reports from Dr. Morehead and other evidence to support her determination that McCoy was disabled prior to March 17, 1992.

It is the ALJ's responsibility to resolve conflicts in the evidence such as inconsistent reports from physicians who examined a recipient at around the same time. However, having concluded that the evidence warrants a finding of disability, the ALJ is not free to terminate those benefits unless there is substantial evidence in the record of medical improvement related to the claimant's ability to work.[5]  In the present case, the

---

[5]  The eight-step analysis allows an ALJ to terminate benefits in certain cases even if there has been no medical improvement in the recipient's condition. See, e.g., 20 F.C.R. §404.1594 (F)(5).  For example, benefits may be terminated if there is substantial evidence to support an ALJ's decision that the original disability determination was made in error.  20 C.F.R.  § 404.1594(d)(4).  This section is inapplicable here,

12

only evidence supporting the ALJ's finding of medical improvement is a report from McCoy's physical therapist on March 17, 1992, that McCoy was "now at the point where she is quite in control of her symptoms. If she stretches often and watches her posture, she can keep herself feeling quite good." Counterbalancing this statement is overwhelming evidence in the record that McCoy's condition did not materially change after March 17, 1992. Dr. Marks, the only physician who examined McCoy after March 17, concluded that she would not be able to do even selected work for several months after his examination. Further, McCoy's own description of her condition lends little support to the ALJ's conclusion that McCoy's condition had improved significantly. Instead, the records and McCoy's own testimony describe a patient whose impairment fluctuates from day to day but does not improve significantly for any extended period of time. Thus, while the ALJ might reasonably have concluded from the evidence that McCoy was never disabled, the record does not contain substantial evidence that McCoy experienced medical improvement after March

_____

however, because the ALJ determined that McCoy was entitled to benefits for the prior period in the same decision in which she terminated benefits for the period after March 17, 1991. Moreover, I have no authority to re-examine the portion of the ALJ's decision that favored McCoy.

13

17.

   **B.   Medical Improvement Related to Ability to Work**

   The Secretary's procedure for determining whether medical improvement is related to a recipient's ability to work requires her to assess the recipient's RFC and to compare that to recipient's RFC when the ALJ found her disabled.  20 C.F.R. §§ 404.1594(c)(2), 416.994(b)(2).  In making this assessment, the ALJ must evaluate a recipient's ability to do basic work activities, including the exertional activities of walking, standing, pushing, pulling, and carrying, and non-exertional sensory and cognitive abilities.  20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(1)(10).

   The ALJ determined that between February 13, 1991, and March 17, 1992, McCoy's RFC limited her to "the physical exertion and nonexertional requirements of a range of work defined as light which would allow the claimant the option to sit or stand, require no bending, twisting, and require no fast movement of the head or neck."  By March 17, however, the ALJ found that "claimant had the residual functional capacity to perform the physical exertion and nonexertional requirements of a full range of work defined as light" without limitations.  After carefully reviewing the administrative record, I cannot find any

significant evidence to support this claimed improvement in McCoy's RFC. Thus, even if McCoy had experienced medical improvement after March 17, 1992, there is insufficient evidence in the record to support the ALJ's determination that her medical improvement was related to her ability to work. Accordingly, I cannot allow the ALJ's decision to terminate McCoy's benefits to stand.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, claimant's motion to reverse the Secretary's decision terminating benefits (document no. 12) is granted and the Secretary's motion to affirm the decision (document no. 11) is denied. The Secretary's decision is reversed, in part, reinstating benefits from March 17, 1992.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

March 8, 1995

cc: Raymond J. Kelly, Esq.
    David L. Broderick, Esq., AUSA

15