**Bruce E. NIERZWICK, Plaintiff–Appellant,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee.**

**No. 00–1575.**

United States Court of Appeals, Sixth Circuit.

March 19, 2001.

Before COLE and GILMAN, Circuit Judges, ALDRICH, District Judge.*

## ORDER

Bruce E. Nierzwick appeals pro se from a district court judgment that affirmed the Commissioner's decision to terminate his social security disability and supplemental security income benefits. His appeal has been referred to a panel of this court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, the panel unanimously agrees that oral argument is not needed in this case. *See* Fed. R.App. P. 34(a).

An Administrative Law Judge ("ALJ") found that Nierzwick had previously been found to be disabled as of September 23, 1987, and that he still had a severe impairment consisting of spondylolisthesis at L5. The ALJ found that Nierzwick could not perform his past work, even though his condition was not equivalent to any of the impairments that are listed in Appendix 1 to the regulations. These findings are not in dispute. However, the ALJ also found that Nierzwick's medical condition had improved since he was awarded benefits in 1990. Thus, the ALJ relied in part on the testimony of a vocational expert ("VE") and found that Nierzwick was no longer disabled because a limited but significant number of sedentary jobs were available to him despite his impairments. This opinion became the final decision of the Commis-

---

* The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

sioner on March 18, 1999, when the Appeals Council declined further review.

██ Nierzwick then filed a complaint in federal court. The district court adopted a magistrate judge's recommendation and awarded summary judgment to the Commissioner on February 29, 2000. Nierzwick argues that the court improperly determined the facts of his case. This argument is unavailing because we conduct an independent review of the administrative record.

Judicial review of the Secretary's decisions is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards. Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. This court does not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility.

In determining the existence of substantial evidence, this court must examine the administrative record as a whole. If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.

*Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994) (citations omitted). There is no presumption of a continuing disability. *Id.* at 286–87 & n. 1. Instead, the Commissioner applies the procedures that are outlined in 20 C.F.R. §§ 404.1594 and 416.994, to determine whether a claimant's disability has ended and that he is now able to work.

The first part of the evaluation process, then, focuses on medical improvement. The implementing regulations define a medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s)." And a medical improvement is only related to an individual's ability to work "if there has been a decrease in the severity ... of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic work activities." 20 C.F.R. § 404.1594(b)(3).

The second part of the evaluation process relates to ability to engage in substantial gainful activity. Here the implementing regulations incorporate many of the standards set forth in the regulations governing initial disability determinations. *See* 20 C.F.R. § 404.1594(b)(5) and (f)(7). The difference, of course, is that the ultimate burden of proof lies with the Secretary in termination proceedings.

*Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir.1991).

██ Nierzwick argues that he received conflicting notices regarding termination. However, the second notice adequately advised him that his benefits would cease. The regulations place only general limits on the frequency of reviews, and any error was cured by the fact that he pursued all levels of administrative review. *See Marshall v. Chater*, 75 F.3d 1421, 1427–28 (10th Cir.1996).

Nierzwick alleges that he was denied access to the agency's medical file when he first sought reconsideration of the decision

to terminate his benefits. This argument is unpersuasive, because he now concedes that he was subsequently allowed to review his file.

■ Nierzwick also argues that the ALJ refused to subpoena two consulting physicians and a disability caseworker. However, the ALJ did not abuse his discretion, as Nierzwick did not show that the testimony of these witnesses was reasonably necessary for the full presentation of his case. *See Calvin v. Chater,* 73 F.3d 87, 90–93 (6th Cir.1996).

■ Nierzwick argues that the ALJ failed to include reports from several sources to whom he was apparently referred by his treating physician, Dr. Dziuba. This argument is unpersuasive because Nierzwick had the initial responsibility of providing the agency with medical reports regarding his disability and because the disputed reports were created at least three years before benefits were terminated. *See* 20 C.F.R. §§ 404.1593(b) *and* 416.993(b). Moreover, Nierzwick failed to submit these reports, even though the record was kept open after his hearing. *See Born v. Secretary of Health & Human Servs.,* 923 F.2d 1168, 1172 (6th Cir.1990).

In 1990, a different ALJ found that Nierzwick was entitled to benefits because he had severe spondylolysis, a hernia, spondylolisthesis, a personality disorder and pain.

In November of 1994, Nierzwick was examined by a consulting internist, Dr. Rojas, who described the improvement in his condition as follows:

> In brief, Mr. Nierzwick has a history of chronic low back pain following a back injury in 1982. There is mild tenderness in the right sacroiliac area but there are no other major objective findings. There are no neurological deficit[s] that can be detected in the lower

limbs. He has been told that he has spondylolisthesis at the level of L5 and S1 as well as right sciatic neuritis. As mentioned above, the objective findings are rather minimal.

Nierzwick also received a psychiatric examination from Dr. Mahal, in November of 1994, who noted that he "stated that he gets along well with people" and was able to relate well during the interview. Dr. Mahal also made the following observations regarding Nierzwick's mental status:

> He is alert, coherent and in touch with reality.... There is no evidence of any ... disorder of the thought process.... He is not delusional.... There is no evidence of any obsessions or compulsions.... His mood and affect are eu[ry]thymic. He is quite verbal and able to get his points across.

Despite these findings, Dr. Mahal diagnosed Nierzwick with a mild post traumatic stress disorder and a personality disorder with possible passive aggressive features. He also opined that Nierzwick had a Global Assessment of Functioning score of 35.

In March of 1995, Dr. Dziuba, reported that Nierzwick had partially responded to therapy, and summarized his opinion of Nierzwick's condition as follows:

> Bruce Nierzwick has underlying spondylolisthesis at L–5 with chronic low back pain. There has been improvement over time, but he still needs daily home therapy and has positional and activity limitations as well as weight lifting restrictions. Please reconsider his status with Social Security Disability as he still exhibits some disabling symptoms.

■ These reports provide substantial support for the ALJ's finding that Nierzwick's medical condition had improved since the last favorable decision regarding

his disability. *See Cutlip*, 25 F.3d at 287; *Griego*, 940 F.2d at 945–46. Dr. Dziuba reported that Nierzwick's condition had improved and that he was limited only in his ability to sit and stand for prolonged periods of time. Dr. Rojas indicated that Nierzwick no longer had a hernia, that his spine was in good alignment, and that his straight leg raising maneuvers were full bilaterally. In addition, Dr. Mahal's report indicates an improvement in Nierzwick's mental and social skills. It cannot reasonably be argued that these improvements were unrelated to Nierzwick's ability to perform work-related functions.

Nierzwick argues that the ALJ improperly discounted Dr. Mahal's opinion that he had a GAF of 35. However, this assessment was not necessarily inconsistent with the ALJ's finding that Nierzwick's condition had improved or with the hypothetical question that was posed to the VE. Moreover, the ALJ reasonably found that the assessment was not consistent with the other observations in Dr. Mahal's report. This finding is supported by the assessment of a non-examining consultant. Thus, substantial evidence supports the ALJ's decision to discount Dr. Mahal's assessment. *See Her v. Commissioner of Soc. Sec.*, 203 F.3d 388, 390–91 (6th Cir. 1999).

Although Nierzwick's condition had improved, the ALJ found that he still had a severe impairment which precluded his past work. Thus, the ALJ considered whether Nierzwick was able to perform other types of work, and found that he had the residual functional capacity to perform the exertional requirements of a limited range of sedentary jobs which did not require prolonged sitting or standing. This finding is primarily supported by the report of Dr. Rojas. Nierzwick argues that Dr. Rojas's findings are not based on objective testing. However, the record shows that these findings were based on his physical examination of Nierzwick, which included a straight-leg raising test. In addition, Dr. Rojas's diagnosis is more conservative than the residual functional capacity assessment of a non-examining physician, which indicates that Nierzwick can perform the exertional requirements of light work.

■ Nierzwick also argues that Dr. Rojas's findings are contradicted by a physical therapy report. This report is not afforded significant weight because a physical therapist is not recognized as an acceptable medical source. *See Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 530–31 (6th Cir.1997). Moreover, the report is not necessarily inconsistent with the ALJ's findings regarding Nierzwick's residual functional capacity. Those findings are partially supported by Nierzwick's own testimony, which indicates that he can perform the exertional requirements of sedentary work with a sit/stand option, even though he alleged a sore hand and denied the ability to work a full eight-hour day. They are also supported by Nierzwick's description of his daily activities, which include cooking, housekeeping, shopping, visiting with friends and driving. *See id.* at 532.

■ Nierzwick argues that the ALJ erred by discounting his allegations of disabling pain. "An ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir.1990). In the present case, substantial evidence supports the ALJ's finding that Nierzwick was not fully credible, insofar as he had alleged that he was unable to perform even a limited range of sedentary work. *See id.* at 1182–83.

Nierzwick also argues that his inability to sit or stand for prolonged periods of time precluded a full range of sedentary work. However, the ALJ did not find that Nierzwick was able to perform a full range of sedentary work. Instead, the ALJ properly considered the combined effect of Nierzwick's impairments, and relied on the VE's testimony to find that a significant number of jobs were available to him, even though he could only perform a limited range of sedentary work. *See Loy v. Secretary of Health and Human Servs.,* 901 F.2d 1306, 1310 (6th Cir.1990).

The ALJ posed a hypothetical question to the VE which described a claimant who could do only a limited range of unskilled sedentary work, which included a sit-stand option. He ruled out production line work that required the use of the upper extremities, and limited the VE to jobs that were low in stress, especially regarding interactions with fellow employees and the general public. In response, the VE identified a significant number of sedentary jobs that would be available to an individual with Nierzwick's residual functional capacity and vocational background.

■ Nierzwick argues that a finding that he can perform cashier jobs is inconsistent with the ALJ's finding that he can no longer perform his past work as a gas station cashier. This argument fails because the VE expressly indicated that Nierzwick's previous cashier job had involved medium work. Moreover, the jobs that were described by the VE represented only four percent of the jobs that were available to Nierzwick in the national economy. Therefore, the VE's response satisfied the Commissioner's burden of showing that Nierzwick was no longer disabled because a significant number of jobs were still available to him, even though he could not perform his past relevant work. *See Harmon v. Apfel,* 168 F.3d 289, 291–92 (6th Cir.1999).

Nierzwick argues that the ALJ failed to consider an issue regarding the alleged overpayment of benefits. The Commissioner argues that Nierzwick could not raise this issue because it was not the subject of the same pre-hearing administrative review procedures as his disability claim. This argument is at odds with the plain language of 20 C.F.R. §§ 404.946(b) and 416.1446(b), which provides in pertinent part as follows: "any party may raise a new issue; an issue may be raised even though it arose after the request for a hearing and even though it has not been considered in an initial or reconsidered determination."

■ The overpayment issue involves the amount of benefits that Nierzwick was entitled to while he was participating in an approved Program to Achieve Self–Support ("PASS"). Claimants who are enrolled in a PASS program can set aside income or resources for vocational training or education, without losing their disability benefits. *See* 20 C.F.R. § 416.1180 *et seq.* Nierzwick maintains that his benefits should not have been terminated until he completed his PASS plan. In response, the Commissioner argues that there is nothing in the regulations which precludes the termination of a PASS enrollee's benefits if he is found to be disabled. This argument overlooks 42 U.S.C. § 425(b) which provides as follows:

(b) Continued payments during rehabilitation program

Notwithstanding any other provision of this subchapter, payment to an individual of benefits based on disability (as described in the first sentence of subsection (a) of this section) shall not be terminated or suspended because the physical or mental impairment, on which the individual's entitlement to such benefits is based, has or may have ceased, if—

(1) such individual is participating in a program of vocational rehabilitation services approved by the Commissioner of Social Security, and

(2) the Commissioner of Social Security determines that the completion of such program, or its continuation for a specified period of time, will increase the likelihood that such individual may (following his participation in such program) be permanently removed from the disability benefit rolls.

42 U.S.C. § 425(b); *accord* 42 U.S.C. § 1383(a)(6). In light of this authority, a remand is necessary to allow the Commissioner to determine, in the first instance, whether Nierzwick was properly charged with an overpayment and whether his benefits were prematurely terminated while he was still a qualified PASS enrollee. *See Wittler v. Chater,* 59 F.3d 95, 98–99 (8th Cir.1995).

Finally, Nierzwick argues that he is entitled to recover costs. A prevailing party other than the United States may recover the fees and expenses that he has incurred, unless the position of the United States was substantially justified or special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A). Nierzwick has not met these requirements because he was not the prevailing party on the central issue of whether the Commissioner properly found that he was no longer disabled. Moreover, he has not prevailed on the issues regarding his participation in a PASS program and the alleged overpayment of benefits, even though his case will be remanded to allow further development of those issues. *See Sullivan v. Hudson,* 490 U.S. 877, 887, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989).

Accordingly, all pending motions are denied, the district court's judgment is affirmed in part and vacated in part, and the case is remanded to the district court with directions that it be remanded to the Com-

missioner for further proceedings. *See* Rule 34(j)(2)(C), Rules of the Sixth Circuit.