NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0670n.06
Filed: September 7, 2007

Nos. 06-6582

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **RACHEL KENNEDY** | ) | |
| | ) | |
| *Plaintiff-Appellant,* | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| **MICHAEL J. ASTRUE,** | ) | THE EASTERN DISTRICT OF |
| **COMMISSIONER OF SOCIAL** | ) | KENTUCKY |
| **SECURITY** | ) | |
| | ) | |
| *Defendant-Appellee.* | ) | |

Before: CLAY and SUTTON, Circuit Judges; and GREER, District Judge.[*]

**GREER, District Judge**. Rachel Kennedy (Kennedy) was found disabled as of

September 1, 1994, by the Social Security Administration (SSA) and awarded supplemental security

income (SSI) benefits. SSA found that Kennedy's psychological disorder and obesity imposed

limitations that precluded work and rendered her disabled. On May 14, 2003, SSA notified Kennedy

that a review of her medical records showed that her condition had improved and she was no longer

disabled. Her disability benefits were terminated in July, 2003. After a hearing before an

administrative law judge (ALJ), the initial determination was upheld and the ALJ found that the

medical evidence established an "improvement in the claimant's psychological and physical

---

[*] The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee, sitting by designation.

condition" and that, while her impairments remain severe, she retains the residual functional capacity to perform work "except work that requires more than a limited ability to withstand work stresses in a routine eight hour day" at all exertional levels. The ALJ determined that Kennedy's disability ceased as of May 1, 2003.[1]

After SSA's appeals council denied her request for review, Kennedy filed suit in the federal district court. The district court granted summary judgment to the Commissioner of Social Security (Commissioner) and this appeal followed. For the reasons set forth below, we REVERSE the judgment of the district court with instructions to remand the case to the Commissioner for an award of continuing benefits.

## FACTUAL AND PROCEDURAL BACKGROUND

At the time of the initial determination of disability, Kennedy was a 23 year old high school graduate who had completed one year of college with no relevant work history.[2] She reported physical and mental problems of high blood pressure, depression, hormone imbalance, fluid retention, overweight, TB "germ" and bronchitis. She was determined to be disabled by SSA as the result of an affective disorder (depressive syndrome) and morbid obesity. As part of the initial

---

[1] The ALJ's decision is internally contradictory on the issue of when disability ceased. At page 12 of the ALJ's decision, the ALJ finds that disability ceased as of February 1, 2002, and that her eligibility for benefits ended as of April 1, 2002. On page 13 of the ALJ's decision, however, the ALJ finds that Kennedy's disability ceased as of May 1, 2003, and her eligibility ceased as of July 1, 2003.

[2] Kennedy listed her birth date as February 12, 1971, on her SSI application and testified at the hearing before the ALJ that her date of birth is February 12, 1971. All medical records in the file also indicate a date of birth of February 12, 1971. The ALJ, however, found a date of birth of July 4, 1973. No explanation for the ALJ's finding is apparent from the record.

2

determination process, she was referred by SSA for both a medical and a psychological consultative examination.

A psychological consultative examination was performed by Bob Winston, M.D., on February 16, 1995. Dr. Winston described Kennedy as an obese, white female wearing appropriate and clean clothing who was cooperative throughout the interview. She was alert, coherent and logical but her mood was described as "sad affect." Dr. Winston described her insight as "shallow" and judgment as "fair." Dr. Winston diagnosed "major depression, recurrent" (Axis I) and obesity, tuberculosis by history, and hypertension (Axis III). Kennedy had a global assessment function ("GAF") score of 55. Dr. Winston described her as "markedly impaired."

A consultative medical exam was done by Shantae Lucas, M.D., on January 28, 1995. Dr. Lucas reported Kennedy's weight as 276 pounds. Kennedy could bend to 90 degrees and squat without difficulty. She had no neurological deficits and joint flexion was normal. Her diagnosis was morbid obesity, well controlled asthma and well controlled hypertension. Dr. Lucas found Kennedy's "tolerance for standing, walking, stooping, bending, lifting, sitting and traveling is diminished by obesity" and described her functional impairment to be mild.

Based upon the available medical and psychological data, state agency physicians found Kennedy disabled because of affective mood disorder and obesity. The state agency physicians noted slight to moderate restrictions of daily activities, moderate difficulties in maintaining social functioning, moderately limited ability to work in coordination with or proximity to others without being distracted by them and moderately limited ability to interact appropriately

with the general public.

Kennedy was determined to have the mental capacity to understand/remember instructions; perform unskilled/semi-skilled tasks for adequate time intervals; respond adequately in settings that do not require complex interaction or cooperation with others; and adapt to the usual demands of a competitive work setting. A state agency physician found exertional limitations of occasionally lifting and/or carrying twenty pounds; frequently lifting and/or carrying ten (10) pounds; standing and/or walking at least two hours in an eight-hour work day; sitting about six hours in an eight-hour work day; and unlimited pushing and/or pulling based upon her obesity and other conditions.

During the years between the initial onset of disability and the 2003 review initiated by SSA, Kennedy sought treatment for a variety of maladies and was prescribed medication for various conditions through her family physician. She had a recurrent diagnosis of depression, treated with Zoloft, and obesity, treated most recently with weight loss medications. Her weight fluctuated from a high of 320 pounds on July 2, 2002, to a low of 247 pounds on June 23, 2004.

During the review process, Kennedy was referred to Gary Maryman, Psy.D., licensed clinical psychologist, for a consultative psychiatric exam. She was examined on March 18, 2003. Maryman described her to be moderately obese, casual, clean and appropriately attired. She was fully alert at the time of the examination, seemed to be reasonably well composed and "showed no signs of anxiety, timidity, or depression." Maryman diagnosed dysthymic disorder (Axis I) and an axis IV rating of severe. Kennedy had a GAF score of 60. In summary, Maryman said:

Ms. Kennedy was regarded to be an individual of sufficient intellectual ability that would permit her to understand, retain, and carry out a simple to somewhat more complicated instruction and task. In the main, during this examination she showed the likelihood that she would have sufficient focus, concentration, and persistence to where she should be able to complete and carry out a work assignment within a reasonable time frame and across a routine work schedule. It is felt that she should have no problems interacting appropriately with fellow workers and supervisors and would not appear necessarily precluded from having the ability to interact and deal with the general public reasonably well, even though it would certainly appear that she would be moderately limited in that respect. Finally, it would appear that this young lady should be able to adjust and adapt reasonably well to stressers and pressures associated with a routine work atmosphere. She would appear to be better suited for a medium to lower stress work environment and somewhat more restricted in a more fast paced and high pressure work atmosphere.

No consultative medical exam was obtained during the review process; however, a consultation request was sent to an agency physician seeking assessment of Kennedy's physical disorders. The request, noting allegations of "asthma, TB, vision, stomach," sought a current physical assessment and says "looks LTS." C. Hernandez, M.D., wrote in response: "You are correct!! LTS. Thanks." Interestingly, Kennedy's obesity was not noted and no assessment of her obesity and its effects on her ability to do work related activities was completed.

## ANALYSIS

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's decisions. Judicial review of the Commissioner's decisions is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards. *Richardson v. Perales,* 402 U.S. 389, 401, 91

S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 535 (6th Cir.1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). This Court does not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility. *Brainard v. Secretary of Health & Human Services,* 889 F.2d 679, 681 (6th Cir.1989); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1984).

In determining the existence of substantial evidence, this court must examine the administrative record as a whole. *Kirk,* 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir.1983), and even if substantial evidence also supports the opposite conclusion, *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986) (*en banc*).

When the cessation of benefits is at issue, as here, the central question is whether the claimant's medical impairments have improved to the point where she is able to perform substantial gainful activity. 42 U.S.C. § 423(f)(1). Improvement is measured from "the most recent favorable decision" that the claimant was disabled. 20 C.F.R. § 416.994(b)(1)(i). There is no presumption of continuing disability. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286-287 n.1 (6th Cir. 1994). Instead, the Commissioner applies the procedures that are outlined in 20 C.F.R. §§ 404.1594 and 416.994 to determine whether a claimant's disability has ended and that she is now

able to work.

The first part of the evaluation process, then, focuses on medical improvement. The implementing regulations define a medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)."*Id.* And a medical improvement is related to an individual's ability to work only "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic work activities. . ." 20 C.F.R. § 404.1594(b)(3). See also *Nierzwick v. Commissioner of Social Security*, 7 Fed. Appx. 358, 2001 WL 303522 (6th Cir. 2001).

The second part of the evaluation process relates to ability to engage in substantial gainful activity. Here the implementing regulations incorporate many of the standards set forth in regulations governing initial disability determinations. See 20 C.F.R. § 404.1594(b)(5) and (f)(7). The difference, of course, is that the ultimate burden of proof lies with the Commissioner in termination proceedings. *Id.*; *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991).

With this legal framework in mind, we have reviewed the medical records and the decision of the ALJ. This case turns on whether substantial evidence shows there has been medical improvement in Kennedy's impairments, other than improvement which is not related to her ability to work. We conclude that there is not.

**Psychological Impairment**

The ALJ's decision pointed to three factors "consistent with significant improvement in psychological functioning." (ALJ Decision at 6). According to the ALJ, "[n]o treating or examining source has noted a blunted effect or depressed mood" since 1995 and GAF scores increased from 55 to 60. *Id.* The ALJ also noted that the state agency psychological consultant assessed mild limitations in activities of daily living, moderate limitation in social functioning, mild limitations in concentration, persistence and pace, and that she could "understand, remember and carry out, and sustain simple tasks, adapt to workplace changes and function more effectively in a task verses public setting." *Id.* at 7. With the exception of Kennedy's ability to function effectively in a public setting, which was not assessed in 1995, these functional abilities are the same as those assessed in 1995.

While the ALJ correctly pointed to various functional abilities possessed by Kennedy, including her ability to understand, retain and carry out simple to somewhat more complicated instructions and tasks, sufficient focus, concentration and persistence to be able to complete and carry out a work assignment and her ability to interact appropriately with fellow workers, no effort was made by the ALJ nor any medical source to ***compare*** her abilities or her limitations to those possessed at the time of the initial determination. Medical improvement is any <u>decrease</u> in the medical severity of the claimant's impairment which was present at the time of the prior favorable decision. Medical improvement "is determined by a comparison of prior and current medical evidence . . ." 20 CFR § 404.1594(c)(1). As noted above, Kennedy appears to have had essentially

the same functional abilities 1995 as these noted by the ALJ in support of his finding of medical improvement. The conclusions of the Commissioner and the ALJ that these functional abilities indicate medical improvement is not supported by substantial evidence and is in fact contrary to the evidence in the record.

The ALJ's finding that "[n]o treating or examining source has noted a blunted affect or depressed mood" since 1995 is also contradicted by the record. Contrary to the Commissioner's assertions that Dr. Maryman found no signs of depression on continuing disability review, Dr. Maryman's diagnosis was dysthymic disorder, listed as a mood disorder characterized by "a chronically depressed mood" in the *Diagnostic and Statistical Manual of Mental Disorders*, 4th Edition. (DSM-IV). Kennedy's treating physician diagnosed her repeatedly from 1994 through 2003 as suffering from depression. It is true that Dr. Maryman did not report that he observed a blunted affect on the date of his examination; however, such a failure to observe this condition on the day of examination does not logically lead to a conclusion of medical improvement. Likewise, Dr. Maryman's observation that Kennedy, at the time of the examination, "showed no signs of acute emotional distress" and "no signs of anxiety, timidity, or depression" does not necessarily indicate the lack of "depressed mood," which "is consistent with significant improvement in psychological function."

Perhaps the most troubling aspect of the Commissioner's position concerning Kennedy's psychological impairment relates to her GAF score. Dr. Winston assigned a GAF score of 55 in 1995. Dr. Maryman found a 2003 GAF equal to 60. The ALJ considerd the increase from

55 to 60 to "reflect improvement in mental functioning" and the Commissioner points to the current score of 60 as an "improved GAF." (Appellee's Brief at 15).

A GAF score of 60 indicates a moderate impairment in psychological functioning. See *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 503 (6th Cir. 2006) (explaining that a "GAF of 51-60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (*e.g.* few friends, conflict with peers or co-workers)." *Id.* (internal quotation marks omitted) GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning. *Id.* at n.7.

Furthermore, the Commissioner "has declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *DeBoard v. Commissioner of Social Security*, 211 Fed. Appx. 411 (6th Cir. 2006) (quoting *Wind v. Barnhart*, No. 04-16371, 2005 WL 1317040, at *6 n.5, 133 Fed. Appx. 684 (11th Cir. June 2, 2005) (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)). The GAF scores, therefore, are not raw medical data and do not necessarily indicate improved symptoms or mental functioning. Even if that were the case, the improvement in score alone has not been shown to be significant in this case since the 1995 GAF score (55) is in the same range as the 2003 score (60). Both scores indicate moderate

symptoms or moderate difficulty in social, occupational or school functioning. The argument of the Commissioner and the finding of the ALJ that the increased GAF score reflects "improvement in mental functioning" is not supported by substantial evidence.

**Obesity**

At the time of the prior determination, Kennedy weighed 276 pounds. Based upon her "morbid obesity," a state agency physician, Logan M. Mahaffey, M.D., found exertional limitations with lifting, standing and sitting. The agency physician found that Kennedy had the physical functional capacity of lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, of standing at least two hours in an eight-hour workday (but not about 6 hours in an eight-hour workday) and of sitting about six hours in an eight-hour workday. Dr. Mahaffey also found occasional (occurring from very little up to one-third of an eight-hour workday, cumulative) limitations in climbing, balancing, stooping, keeling, crouching and crawling.

On April 30, 2003, the day before the ALJ determined her disability to have ceased, Kennedy weighed 299 pounds.[3] At the time of her hearing on April 13, 2005, Kennedy weighed 265 pounds. Throughout the entire period between the 1994 decision and the 2003 decision, Kennedy's weight fluctuated. The only medical evidence in the file concerning any physical impairment is the report of a state agency physician, C. Hernandez, M.D. Dr. Hernandez's total report consists of the handwritten notation: "You are correct!! LTS. Thanks." From this notation, the ALJ concludes, by

---

[3] The ALJ's decision cites a weight of 285 pounds in April, 2003. This was actually the weight documented in the medical records for May 28, 2003.

11

comparing Dr. Hernandez's conclusion of "less than severe physical impairments" to the limitation in 1994 to light physical exertion, that there is "medical improvement." The Commissioner argues, in his brief, that Dr. Hernandez's opinion "that claimant's physical impairments do not limit her ability to work," not contradicted by any evidence from a treating or examining source, constitutes substantial evidence in support of the ALJ's decision. (Appellee's Brief at 20).

We disagree. The reliance of the Commissioner and the ALJ on Dr. Hernandez's conclusion is flawed for a very simple reason. A review of the consultation request sent to Dr. Hernandez indicates physical disorders of "asthma, TB, vision, stomach." No mention is made of Kennedy's obesity and no evidence appears in the record suggesting that Dr. Hernandez evaluated the effects of her obesity on her physical functioning. Furthermore, as the Commissioner correctly argues, a mere diagnosis of obesity does not establish either the condition's severity or its effect on Kennedy's functional limitations.

Because the record contains no evidence of improvement in physical functioning related to Kennedy's obesity, both parties focus their arguments on Kennedy's weight at various points since the prior decision and on whether SSR 02-1P, 2000 WL 628049 (S.S.A.), applies to this case. Kennedy argues that SSR 02-1P dictates a finding that there has been no medical improvement in her obesity since the prior decision.[4] The Commissioner, on the other hand, argues that SSR 02-1P has no application to this case but rather applies only to cases where the claimant was previously

---

[4] SSR 02-1P provides that SSA will consider obesity to have medically improved if an individual maintains a consistent loss of at least ten percent of body weight for at least twelve months.

12

found disabled under the now deleted listing 9.09.  Kennedy was not found disabled under listing 9.09. [5]

We need not decide the reach of SSR 02-1P for the purposes of this appeal.  It is for a more basic reason that we find that no substantial evidence supports the decision of the ALJ that improved physical functioning has been established in this case.  This record contains nothing to indicate that any effort was made to determine what, if any, effect Kennedy's obesity has on her current level of physical functioning and no comparison was made of Kennedy's impairments at the time of the review and those present at the time of the prior determination.  The Commissioner concedes that evaluation of obesity requires "an individualized assessment of the impact of obesity on an individual's functioning," and that obesity is "properly assessed by its actual impact on other systems through increased functional limitation." (Appellee's Brief at 18).  This is exactly what was not done in this case.

Because this is a case which requires a showing of changed circumstances (*i.e.*, medical improvement) in order to displace earlier findings, *Drummond v. Commissioner of Social Security*, 126 F.3d 837, 842 (6th Cir. 1997) (holding that "when the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances"), a comparison between circumstances existing at the

---

[5] The Commissioner deleted listing 9.09 effective October 25, 1999.  The listing was met by a claimant with weight equal to or greater than set forth in certain tables (100 percent above desired level) <u>and</u> arthritis in any weight bearing joint, hypertension with diastolic blood pressure persistently in excess of 100 mm. Hg, history of congestive heart failure, chronic venous insufficiency or respiratory disease with hypoxemia.

time of the prior decision and circumstances existing at the time of the review is necessary. When the cessation of benefits is the issue, the Commissioner is not to make a new medical determination but rather is to determine whether there has been "medical improvement," (*i.e.*, a decrease in the severity of impairment). 20 C.F.R. § 416.994(b)(1)(i). The required comparison simply was not made in this case.

## CONCLUSION

Having found that substantial evidence does not support the Commissioner's decision in this case, we must then determine the nature of the remand. Kennedy seeks a remand of the case to the Commissioner for an award of continuing benefits. The Court can reverse a decision of the Commissioner and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking. *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). On the other hand, 42 U.S.C. § 405(g) gives the court the power to remand for a rehearing, and the court is obliged to do so if all essential factual issues have not yet been resolved. *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

The question of whether to remand to the district court for an immediate award of benefits or to remand for further fact finding is a close one in this case. On the one hand, the ultimate burden is on the Commissioner in termination proceedings and we have found that

substantial evidence does not support the termination. On the other hand, while there is some evidence in this case of some medical improvement in Kennedy's psychological impairment in that she would "appear to be better suited for a medium to lower stress work environment," there was no comparison of prior and current medical evidence as required by the law and there was no evidence concerning how Kennedy's obesity affects her physical functional capacity.

In this termination of benefits case, it was incumbent upon the Commissioner to provide evidence of medical improvement and to develop the record at the evidentiary hearing before the ALJ. He failed to do so. Because evidence of medical improvement is lacking in the record, we see no reason to remand for further factual development.

We therefore REVERSE the judgment of the district court and REMAND with instructions to the district court to remand the case for an award of continuing benefits.