NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 15a0607n.06

Case No. 14-2464

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| VALEMARIA BLANKENSHIP, | ) | **FILED** |
| | ) | Aug 26, 2015 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | OPINION |
| | ) | |

BEFORE: SUTTON and DONALD, Circuit Judges; ZOUHARY, District Judge.[*]

**BERNICE BOUIE DONALD, Circuit Judge.** Valemaria Blankenship ("Blankenship")

appeals the district court's judgment upholding the Commissioner of Social Security's

("Commissioner") denial of Social Security Disability Insurance Benefits ("DIB"). Blankenship

suffers from degenerative joint disease in her feet, which causes, *inter alia*, neuromas, stress

fractures, and breaks requiring outpatient surgical repair. Blankenship applied for DIB in 2002

and again in 2010, claiming she was unable to work due to problems with her feet. An ALJ

denied her first application for benefits in 2004, finding that, despite her condition, she retained

the residual functional capacity ("RFC") to perform light work and there were a significant

number of such jobs in the economy. In 2011, a succeeding ALJ—after finding that Blankenship

had failed to present new evidence of a change in her condition, and was therefore collaterally

---

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

estopped from relitigating her disability claim—denied Blankenship's second application for the same reasons. Blankenship appeals, primarily challenging the second ALJ's conclusion that her medical condition had not deteriorated and that she retained her RFC from 2004. Because substantial evidence supported the second ALJ's findings, we **AFFIRM** the Commissioner's denial of benefits.

I.

A.

Blankenship was born on December 22, 1956 and is currently 58 years old. (PageID 164.) She has an eighth-grade education and is able to read and write. (PageID 50, 62, 194.) As a child, Blankenship was pigeon-toed and wore special shoes. (PageID 369.) Between 1977 and 2002, Blankenship worked at Delphi East, a subsidiary of General Motors in Flint, Michigan. (PageID 50-51.) During the last three years of her tenure there, Blankenship assembled circuit boards for cars. (PageID 51.) As an assembler, she never lifted more than ten pounds; she spent approximately three hours per day sitting and the rest of her day standing. (PageID 51-52.)

In October 1996, at a physical therapy session following bunion removal, Blankenship reported having had at least 21-23 prior surgeries. (PageID 369.) She informed the physical therapist that, for many years, she had a history of foot pain and difficulty walking. (*Id.*) From March 1997 to August 2004, Blankenship underwent twelve outpatient procedures on both feet, including bunion removal, heel spur repair, neuroma (a growth or tumor of nerve tissue) removal, nerve decompressions, plantar fascia repair, fracture repair, and implantation and removal of bone stimulators. (PageID 282-83, 285-87, 289-90, 292-93, 338-41, 343-44, 350-52,

357-58, 360, 362-63, 364-65.)[1]  Beginning in 1998, most of these foot surgeries were performed by Blankenship's podiatrist, Dr. Keith Daniels, DPM ("Dr. Daniels").

Blankenship unsuccessfully applied for DIB on May 9, 2002 ("2002 Application") "due to problems with [her] right foot." (PageID 102.)  A hearing on the 2002 Application, at which Blankenship appeared and testified without representation, was held on April 6, 2004.  (PageID 29.)  This initial application was denied by ALJ Regina Sobrino ("ALJ Sobrino") on September 10, 2004.  (PageID 106.)  ALJ Sobrino found that Blankenship had a "severe" physical impairment consisting of degenerative joint disease in her feet.  (PageID 54, 103, 105.)  ALJ Sobrino further found that this impairment precluded Blankenship from her past relevant work as an assembler.  (PageID 104.)  Based largely on the testimony of vocational expert Timothy Shaner ("Shaner"), however, ALJ Sobrino found that Blankenship had the RFC to perform a limited range of light work and could perform a significant number of light jobs despite the limitations caused by her impaired feet. (PageID 102, 104-06.)  Although Blankenship requested review of the decision by the Social Security Administration's Appeals Council, the Council declined review.  (PageID 29.)  Blankenship did not seek further judicial review.  (*Id.*)

Following this denial, Blankenship had five outpatient procedures on her left foot from September 2004 to September 2006, for tendon repair, removal of hardware, fusion of her first metatarsal cuneiform joint, and two partial tarsectomys.  (PageID 268-71, 273-81.)[2]

B.

Through counsel, Blankenship filed a second application for DIB on January 27, 2010 ("2010 Application"), alleging disability beginning on December 22, 2006—her fiftieth

---

[1] These procedures took place in March 1997, June 1997, September 1997, November 1997, June 1998 (two procedures), September 1998, January 1999, August 2001, January 2002, September 2002, and August 2004.

[2] These procedures took place in February 2005, October 2005, December 2005, April 2006, and September 2006.

birthday.[3] (PageID 164.) Blankenship's insured status for Social Security disability benefits expired nine days later, on December 31, 2006.[4] (PageID 171.)

The denial of the 2010 Application is the subject of this appeal. The state agency responsible for reviewing disability benefits applications denied Blankenship's application, and she requested a hearing before an ALJ. (PageID 29, 126-27.) A hearing was held on September 7, 2011, before ALJ Peter Dowd ("ALJ Dowd"). Blankenship alleged she could not work because of degenerative joint disease in her feet. (PageID 54, 60.) Blankenship testified that she underwent about ten surgeries for fractures in her feet since ALJ Sobrino rendered her decision, (PageID 55-56); records, in fact, demonstrate that she has had an additional fifteen surgeries since ALJ Sobrino's decision. (PageID 251-67.)[5] These surgeries were mainly on her left foot. (PageID 55-56.) Blankenship stated that her feet got worse from 2004 through the end of 2006 because of "[o]steoporosis, fractures, [and] breaks." (PageID 63.) She also complained of asthma and emphysema. (PageID 57-58.)

As for her physical capabilities, Blankenship reported that she could stand for ten minutes. (PageID 65, 71.) She could not walk one block, but was able to walk from her car to the room where the hearing was held. (PageID 66.) Her ability to walk in 2006 was the same as it was in 2011. (PageID 70.) She could lift ten pounds and carry it four or five feet. (PageID 66-67.) She stated she could not lift ten pounds repetitively throughout the day because "my

---

[3] At 50 years old, Blankenship would be considered a "[p]erson closely approaching advanced age." *See* 20 C.F.R. § 404.1563(d) ("If you are closely approaching advanced age (age 50–54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work.").

[4] A "period of disability" can only commence while an applicant is fully insured. *See generally* 42 U.S.C. § 416(i). Blankenship's insured status for purposes of receiving DIB expired on December 31, 2006, and thus she cannot be found disabled unless she can establish a disability prior to that date. *See Gibson v. Sec'y of Health, Educ. & Welfare*, 678 F.2d 653, 654 (6th Cir. 1982); *Traill v. Comm'r of Soc. Sec.*, No. 13-13207, 2015 WL 452191, at *7 (E.D. Mich. Feb. 3, 2015).

[5] In addition to the five aforementioned surgeries between September 2004 and September 2006, Blankenship had ten additional procedures in March 2007, May 2007, August 2007, April 2008, June 2008, February 2009, April 2009, September 2009, February 2011, and March 2011.

hand ain't going to last me." (PageID 67.) She was unable to bend over because she could not get back up, and she was unable to squat. (PageID 69.) According to records, Blankenship had used crutches and a walker following her surgeries. (PageID 195.)

Vocational expert Judith Findora ("Findora") testified at the hearing. (PageID 79-86.) During Findora's testimony, ALJ Dowd posed a "hypothetical question . . . based on the residual functional capacity finding by Judge Sabrino [sic] in her decision of September 10, 2004." (PageID 80.) In this hypothetical, ALJ Dowd asked whether an individual with the following characteristics could perform Blankenship's past work: Blankenship's age on December 31, 2006 (50 years old); Blankenship's education and past work experience; RFC to lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally; ability to stand and walk for two hours in an eight-hour workday, so long as she was given the option to alternate between sitting and standing at will; no operation of foot controls; occasional stooping and rare climbing of stairs; and no crouching, kneeling, crawling, or climbing of ropes, ladders, or scaffolding. (PageID 80-81.) Findora testified—consistent with Shaner's testimony—that such an individual could not perform Blankenship's past work. (PageID 81.) Findora further testified—again consistent with Shaner—that such an individual could perform other light and unskilled occupations, such as that of a cashier, counter clerk, and general office clerk. (PageID 81-82, 104.) She explained that all of these jobs were "sitting jobs" that were classified as light work, as opposed to sedentary work, because of the lifting requirements. (PageID 84.) Findora conceded, however, that a hypothetical worker not capable of repetitively lifting ten pounds or occasionally lifting up to twenty pounds would not be able to perform any of these three light jobs. (PageID 83.) She also conceded that a hypothetical worker who could not walk a block may not be able to walk from a company parking lot into a worksite. (PageID 86.)

In a decision dated November 9, 2011, ALJ Dowd found that Blankenship was not disabled within the meaning of the Social Security Act. (PageID 38.) In reaching this decision, ALJ Dowd found that Blankenship's condition had not "substantially worsened" since ALJ Sobrino's 2004 decision. (PageID 35-36.) Thus, ALJ Dowd reiterated that Blankenship continued to retain the RFC to perform light work so long as she was given the option to alternate between sitting and standing at will; she did not operate foot controls; she was required to stand or walk no more than two hours in an eight-hour workday; she was restricted to occasional stooping and rare climbing of stairs; and she did not have to crouch, kneel, crawl, or climb ropes, ladders, or scaffolding. (PageID 34-36.) Additionally, based on Findora's testimony, ALJ Dowd found Blankenship could perform jobs existing in significant numbers in the national economy. (PageID 37-38.)

Following ALJ Dowd's decision, Blankenship requested review by the Appeals Council and submitted fifteen pages of additional medical evidence ("Exhibit B7F") with her request. (PageID 382-97.) The Appeals Council denied Blankenship's request for review. (PageID 18-21.)

## C.

Blankenship subsequently sought judicial review of ALJ Dowd's decision. (PageID 1-3.) The magistrate judge recommended the district court affirm ALJ Dowd's decision denying benefits. *Blankenship v. Comm'r of Soc. Sec.*, No. 13-12547, 2014 WL 4801829, at *7 (E.D. Mich. Sept. 23, 2014). Specifically, the magistrate judge found that, contrary to Blankenship's assertions, substantial evidence supported ALJ Dowd's finding that her condition had not worsened since 2004. *Id.* at *5-6. The magistrate judge also noted that the evidence Blankenship submitted to the Appeals Council could not be considered in reviewing ALJ

Dowd's decision, and that Blankenship had forfeited any argument for consideration of that evidence for purposes of remand under sentence six of 42 U.S.C. § 405(g). *Id.* at *6 n.5.

Blankenship objected to the magistrate judge's Report and Recommendation. (PageID 478-99.) The district court overruled the objections, adopted the magistrate judge's Report and Recommendation, and entered judgment for the Commissioner. *Blankenship*, 2014 WL 4801829, at *1-3. The court found that large portions of Blankenship's objections were not sufficiently specific, and that the objections that had been adequately articulated were without merit. *Id.* at *1-2. This appeal followed.

II.

We review district court decisions in Social Security cases de novo. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). However, our review is limited to determining whether the Commissioner's findings of fact, as set forth in an ALJ's decision, are supported by substantial evidence, and whether the Commissioner applied the correct legal standards. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). A decision is supported by substantial evidence "when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.3d 524, 535 (6th Cir. 1981) (internal quotation marks omitted)); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) ("Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (per curiam)). Substantiality is considered in light of the record taken "as a whole." *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (quoting

*Allen v. Califano*, 613 F.2d 139, 139 (6th Cir. 1980)). If substantial evidence supports the Commissioner's decision, we must defer to that finding "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Warner*, 375 F.3d at 390 (quoting *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003)).

The Commissioner conducts a five-step sequential analysis to determine if a claimant is disabled within the meaning of the Social Security Act:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of proof at steps one through four. *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005). To prevail at step five, the Commissioner must identify jobs in the economy that accommodate the claimant's RFC, taking into account vocational factors such as age, education, and skills. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

III.

A.

The threshold question before us is whether the doctrine of collateral estoppel controlled ALJ Dowd's assessment of Blankenship's RFC (step four). Blankenship argues that ALJ Dowd misapplied collateral estoppel and, in so doing, improperly held that because ALJ Sobrino found Blankenship was not disabled in September 2004, he was bound to hold that she was not disabled in December 2006. Because "a reasonable mind might accept the relevant evidence as adequate to support a conclusion," *Warner*, 375 F.3d at 390 (internal quotation marks omitted), we hold that substantial evidence supported ALJ Dowd's finding that Blankenship's condition had not substantially worsened.

In *Drummond v. Commissioner of Social Security*, this Court held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d 837, 842 (6th Cir. 1997) (relying on *Senters v. Sec'y of Health & Human Servs.,* No. 91-5966, 1992 WL 78102 (6th Cir. Apr. 17, 1991) (per curiam); *Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598 (6th Cir. 1990) (per curiam); and *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391 (4th Cir. 1987)). In that case, Drummond's initial claim for Social Security Income ("SSI") was denied when an ALJ found that Drummond retained a RFC for sedentary work. *Id.* at 838. When Drummond later re-filed her disability claim, a second ALJ found that Drummond retained a RFC suitable for medium-level work—unlike the sedentary RFC finding of the first ALJ—and denied the re-filed claim. *Id.* at 839. After explaining that "[r]es judicata applies in an administrative law context following a trial type hearing," *id.* at 841, we held that the second ALJ was bound to the sedentary RFC determination of the first ALJ because there was no new or additional evidence of an improvement in Drummond's condition, *id.* at 842. "Just as a social

security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner." *Id.*

In response to *Drummond*, the Social Security Administration promulgated Acquiescence Ruling 98-4(6). The Administration explained:

> This Ruling applies only to disability findings in cases involving claimants who reside in Kentucky, Michigan, Ohio, or Tennessee at the time of the determination or decision on the subsequent claim at the initial, reconsideration, ALJ hearing or Appeals Council level. It applies only to a finding of a claimant's residual functional capacity or other finding required at a step in the sequential evaluation process for determining disability provided under 20 CFR 404.1520, 416.920 or 416.924, as appropriate, which was made in a final decision by an ALJ or the Appeals Council on a prior disability claim.
>
> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators *must* adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period *unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding*.

AR 98-4(6) (S.S.A.), 1998 WL 283902, at *3 (1998) (emphasis added) (footnote omitted).

Read together, *Drummond* and Acquiescence Ruling 98-4(6) clearly establish that a subsequent ALJ is bound by the legal and factual findings of a prior ALJ unless the claimant presents new and material evidence that there has been either a change in the law or a change in the claimant's condition. In the present case, Blankenship argued before ALJ Dowd that her foot condition worsened from September 10, 2004 (the date of ALJ Sobrino's decision), and December 31, 2006 (her last insured date), as evidenced by surgical procedures performed on her feet during this time period. ALJ Dowd, after citing *Drummond* and Acquiescence Ruling 98-4(6), rejected Blankenship's contention and reached the following conclusion:

> Based on a review of the more recent evidence of the record, the claimant's condition through the date last insured did not substantially worsen as compared to September 2004. While she experienced a significant period of difficulty with the left leg (a period which did not last for a full, consecutive twelve months), she experienced no serious problems with the right leg. She indicated at [the] hearing that her current capabilities are consistent with her capabilities at the date last insured, and she is currently capable of unassisted ambulation and of periods of normal, non-antalgic gait. In short, there is no indication that the claimant would have required additional or more restrictive physical limitations than those proposed by Judge Sobrino in 2004: the evidence available between 2004 and the end of 2006 simply does not suggest that the claimant's capabilities significantly diminished. As such, the undersigned is obligated to give force to Judge Sobrino's prior RFC.

(PageID 36.)

On appeal, Blankenship contends that ALJ Dowd erred in following the prior ruling of ALJ Sobrino and allegedly failing to sufficiently consider medical evidence detailing her worsening condition. We find that these arguments mischaracterize ALJ Dowd's decision. As excerpted above, ALJ Dowd "review[ed] . . . the more recent evidence of the record," and found that Blankenship's "condition through the date last insured did not substantially worsen as compared to September 2004." (PageID 36.) ALJ Dowd did not, as Blankenship alleges, simply adopt ALJ Sobrino's findings in conclusory fashion.

Any consideration of whether Blankenship's condition changed during the relevant time period (September 10, 2004 to December 31, 2006) necessarily must begin with consideration of Blankenship's condition at the time of her 2002 Application. *See Kennedy v. Astrue*, 247 F. App'x 761, 768 (6th Cir. 2007) ("Because this is a case which requires a showing of changed circumstances[,] . . . a comparison between circumstances existing at the time of the prior decision and circumstances existing at the time of the review is necessary.") (citation omitted). As recognized by ALJ Dowd, Blankenship "has a long history of difficulties with the feet related

to osteoarthritic changes, fractures[,] and secondary nerve entrapment." (PageID 32.) As previously detailed, Blankenship had approximately 35 surgeries on her feet prior to her 2002 Application. ALJ Sobrino considered these surgeries and found that Blankenship had degenerative joint disease, causing "severe" limitations (step three). (PageID 102-03.) Nonetheless, ALJ Sobrino found that (a) this condition was not so severe that Blankenship lacked the RFC to perform a limited range of light work (step four), and (b) there were a significant number of jobs in the national economy that accommodate Blankenship's RFC, age, education, and skills (step five). (PageID 104.) Because Blankenship did not judicially appeal ALJ Sobrino's decision, the decision became administratively final and, absent new, material evidence from Blankenship, ALJ Dowd correctly determined that he was "obligated to give force to Judge Sobrino's prior RFC." (PageID 36); *see* 20 C.F.R. §§ 404.955, 404.981.

Essentially, these numerous surgeries form the fixed backdrop against which Blankenship's second Social Security claim and the present appeal must be evaluated. Between September 10, 2004, and December 31, 2006, Blankenship had five additional surgical procedures—all on her left foot. (PageID 32-33.) Blankenship has failed to show how these five additional surgeries resulted in a qualitative, material change to her condition. Absent such a showing, ALJ Dowd did not err in finding that these five additional surgeries did not support a finding that Blankenship's condition had worsened. Rather, as the Commissioner argues, these additional surgeries tend to suggest that Blankenship's chronic foot problems, and treatment of those problems, continued to occur in the same pattern.

ALJ Dowd recognized that Blankenship might have had reduced functional capacity for short periods immediately following these surgical procedures, but reasonably found that she retained the ability to walk effectively for significant periods of time. (PageID 33-34.) For

instance, as ALJ Dowd noted, Blankenship admitted that she relied on ambulatory aids such as crutches or a walker only following surgery. (PageID 34, 195.) It was reasonable for ALJ Dowd to find that Blankenship's short-term, post-surgical use of ambulatory aids suggested that she retained the ability stand and walk unassisted for at least short distances outside of these periods of recovery. (PageID 35.)

Further, in evaluating Blankenship's walking and standing abilities in 2005 and 2006, ALJ Dowd reasonably relied on Blankenship's treatment records from 2009 and 2011.[6] (PageID 33-35.) During multiple visits in 2011, Dr. Daniels noted that Blankenship had no problems with her gait, such as shuffling, early heel off, or abnormal pronation. (PageID 306, 308, 313.) Although Blankenship disputes on appeal ALJ Dowd's discussion of her gait in 2011, ALJ Dowd correctly noted that Blankenship testified that her ability to walk and stand at the time of the hearing (September 2011) was the same as it was in 2006. (PageID 33, 35-36, 70.) Accordingly, ALJ Dowd's reliance on later medical evidence in finding that Blankenship had a normal, non-antalgic gait in 2006 was not unreasonable.

Still further, ALJ Dowd reasonably relied on the medical opinion of the state agency reviewing physical, Dr. U. Gupta, who reviewed Blankenship's available medical records and concluded there was no evidence of a change in Blankenship's condition since ALJ Sobrino's decision. (PageID 36, 91-97.) ALJ Dowd found that Dr. Gupta's opinion was consistent with the record evidence, and therefore afforded Dr. Gupta's opinion significant weight. (PageID 36.)

---

[6] As discussed in footnote 4, *supra*, Blankenship's insured status for purposes of receiving DIB benefits expired on December 31, 2006, and thus she cannot be found disabled unless she can establish a disability prior to that date. "In other words, regardless of the seriousness of her present disability, [Blankenship] must prove that she was disabled between December 22, 2006, her alleged onset date of disability, and December 31, 2006, when her insured status expired, in order to be entitled to DIB benefits." *Blankenship*, 2014 WL 4801829, at \*5 (citing *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984)). Nonetheless, evidence relating to a later time period is considered minimally probative, *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (per curiam), and may be considered by the ALJ to the extent it illuminates claimant's health before the expiration of insured status. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).

On appeal, Blankenship challenges ALJ Dowd's and the magistrate judge's reliance on Dr. Gupta's opinion, arguing that Dr. Gupta "never met the Plaintiff," only "reviewed a fraction of her medical records," and he "did not have the benefit of having . . . Dr. Daniels' records and opinions." Blankenship's arguments notwithstanding, Dr. Gupta cannot be faulted for not reviewing records that were not made available either to him or to ALJ Dowd. Moreover, the regulations dictate that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(c)(4); *see also* 20 C.F.R. § 404.1527(e)(1) (discussing evaluation of the opinions of nonexamining consultants).

In sum, ALJ Dowd's findings regarding the absence of evidence of deterioration of Blankenship's RFC after 2004 were reasonable and within his discretion as finder of fact. Because substantial evidence supported ALJ Dowd's finding that Blankenship's condition had not worsened from September 10, 2004, and December 31, 2006, ALJ Dowd correctly found that he was collaterally estopped from revisiting ALJ Sobrino's earlier determination of Blankenship's RFC.

B.

Blankenship also contends that the hypothetical question regarding her RFC that ALJ Dowd posed to the vocational expert was inaccurate. Because of this alleged error, Blankenship contends ALJ Dowd erred in determining that she retained the RFC to perform light work (step four) and that there were a significant number of suitable jobs in the economy (step five). Specifically, Blankenship asserts ALJ Dowd erred in finding she could carry ten pounds frequently or twenty pounds occasionally, and stand or walk for two hours in an eight-hour workday. Blankenship argues that, had ALJ Dowd recognized that she could "at best" perform

sedentary work, then she would have been found disabled pursuant to Medical-Vocational Guideline 201.00, which provides:

> (g) Individuals approaching advanced age (age 50–54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, *a finding of disabled ordinarily obtains*.

20 C.F.R. Pt. 404, Subpt. P, App'x 2 § 201.00(g) (emphasis added); *see also* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."); 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.").

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy*, 594 F.3d at 516. It is reversible error for the ALJ to inadequately describe the claimant's RFC. *Id.* at 516-17. Here, however, ALJ Dowd's hypothetical did not mischaracterize Blankenship's physical limitations. With respect to Blankenship's carrying ability, as ALJ Dowd noted, "there is no [record evidence] that she experiences any significant problems with the upper extremities, spine[,] or any other area that would so restrict her lifting/carrying capacity." (PageID 35.) Blankenship cites no record evidence supporting her assertion that she cannot carry the amounts ALJ Dowd hypothesized. Thus, there is no evidence warranting reversal. *See Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible.") (citing *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)); *Turcus v. Soc.*

*Sec. Admin.*, 110 F. App'x 630, 633 (6th Cir. 2004) ("The ALJ is not obligated to include unsubstantiated complaints and restrictions in his hypothetical questions.") (citing *Stanley*, 39 F.3d at 118-19).

Generally speaking, Blankenship is correct that one's ability to carry is fundamentally related to one's ability to stand and walk. However, ALJ Dowd's hypothetical fully accounted for the fact that Blankenship's foot ailments precluded her from performing a full range of light work. *See* 20 C.F.R. § 404.1567(b) ("Even though the weight lifted may be very little, a job is in [the light work] category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."). Social Security Ruling 83-10 provides that "the full range of light work requires standing or walking, off and on, *for a total of approximately 6 hours of an 8-hour workday*." 1983 WL 31251, at *6 (1983) (emphasis added). In contrast, ALJ Dowd's hypothetical posited an ability to stand and walk for only *two* hours in an eight-hour work day, and the ability to alternate between sitting and standing at will. ALJ Dowd also stipulated other restrictions to light-work duties, such as excluding operation of foot controls and avoiding climbing, kneeling, or stooping. (PageID 34, 80-81.) Blankenship suggests that there is an either/or dichotomy between light work and sedentary work, and because she could not perform a full range of light work, she must necessarily have only been able to do sedentary work. But Blankenship does not provide any legal authority for this position, and likewise does not fully address the limitations built into ALJ Dowd's hypothetical.

With respect to ALJ Dowd's conclusions at step five, Findora identified a significant number of jobs satisfying the strictures of Blankenship's RFC and consistent with her vocational

background, including positions as a cashier, counter clerk, and general office clerk. (PageID 80-84.)  Importantly, the vocational expert explained that these jobs are considered light because of their weight lifting requirements, and are considered "sitting jobs."  (PageID 84.)  Blankenship does not dispute the vocational expert's characterization of the identified jobs, or her testimony that these jobs exist in significant numbers.

C.

Blankenship next argues that ALJ Dowd erred in not affording significant weight to the opinion of her podiatrist, Dr. Daniels.  Specifically, Blankenship claims that ALJ Dowd did not sufficiently consider Dr. Daniels' August 2011 letter, in which he opined that Blankenship was "unable to work a sedentary job because she is unable to walk from the parking lot to the place of work due to the pain," and that osteoporosis, stress fractures, and arthritis "made it impossible [for her] to work, stand or walk any distance."  (PageID 380-81.)  This argument fails.

As an initial matter, Dr. Daniels' statement that Blankenship is unable to work is not dispositive of whether she possessed the RFC to perform other work besides her past relevant work (steps four and five).  *See* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability.  In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled.  A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *id.* at § 404.1527(d)(2) ("We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s).  Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to

the Commissioner."); *Warner*, 375 F.3d at 390. To the extent Blankenship suggests otherwise, she is incorrect.

ALJ Dowd cited Dr. Daniels' August 2011 letter in his decision denying benefits, but concluded that Dr. Daniels' statements regarding Blankenship's inability to work were not supported by the record evidence. (PageID 33.) ALJ Dowd first noted that "Dr. Daniels supplies no examination notes that confirm" his report that Blankenship was unable to work. (*Id.*) Based on the available medical records, ALJ Dowd found nothing to suggest "that the claimant's basic capacity for ambulation was persistently diminished between the period of Judge Sobrino's decision and the date last insured." (PageID 34.) The record only demonstrated that Blankenship was unable to walk for certain periods following her surgeries. (PageID 33.) In particular, Dr. Daniels' assertion that Blankenship was "unable to work a sedentary job because she is unable to walk from the parking lot to the place of work due to the pain," (PageID 380), was seemingly contradicted by the fact that Blankenship was able to walk unassisted from her car to the room where the hearing was being held. (PageID 66.)

As a result, ALJ Dowd reasonably concluded that Dr. Daniels' blanket assertion that Blankenship was unable to walk even short distances was inconsistent with the record evidence, and therefore not entitled to significant weight.

D.

Finally, Blankenship argues that because ALJ Dowd noted the absence of some of Dr. Daniels' medical records, we should remand this case for consideration of the fifteen pages of additional evidence (Exhibit B7F) she submitted to the Appeals Council. Blankenship suggests that this evidence could have changed ALJ Dowd's determination. The district court construed this argument as a request for remand under "sentence six" of 42 U.S.C. 405(g), which permits a

reviewing court to remand a case to the Commissioner for consideration of additional evidence "only upon a showing that there is *new* evidence which is *material* and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added). Even assuming that this argument has not been forfeited[7] and that the difficulty Blankenship had in obtaining the records from Dr. Daniels constitutes good cause,[8] we find that Blankenship has failed to satisfy her burden of demonstrating that a sentence-six remand is warranted. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).

First, the Appeals Council has already considered the records contained in Exhibit B7F in affirming ALJ Dowd's decision. (PageID 18, 21.) The Appeals Council stated: "In looking at your case, we considered the reasons you disagree with [ALJ Dowd's] decision and the additional evidence listed on the enclosed Order of Appeals Council." (PageID 18.) Accordingly, there is no reason to think that remanding this matter for further administrative proceedings would result in a different outcome.

Second, Blankenship has not demonstrated that this additional evidence meets the newness and materiality requirements of § 405(g). Of the fifteen pages contained in Exhibit B7F, six of these pages are duplicative of operative reports from Blankenship's September 2006 and March 2007 surgeries, which were already included in the record. (*Compare* PageID 386-87 *with* 268-69 and 394-97 *with* 264-67.) Further, the treatment notes at PageID 383-85 discuss

---

[7] The Commissioner argues that Blankenship failed to preserve this argument below. In her motion for summary judgment before the district court, Blankenship did not mention sentence six and only cursorily suggested, in a footnote, that the late-submitted evidence warranted remand. (PageID 430.) The district court adopted the magistrate judge's recommendation to not consider this evidence in reviewing his decision. *Blankenship*, 2014 WL 4801829, at *6 n.5 (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)). And because Blankenship had not sought a sentence-six remand, the district court adopted the magistrate judge's recommendation to find this argument forfeited. *Id.* (citing 42 U.S.C. § 405(g) and *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 460 n.2 (6th Cir. 2008)).

[8] Blankenship had difficulty obtaining these records from Dr. Daniels because he had moved his practice from one clinic to another. (PageID 75-76.)

Blankenship's condition prior to her September 2006 surgery, which Dr. Daniels summarized in his aforementioned August 2011 letter. (PageID 380-81.)

That leaves six pages of "new" medical records relating to Dr. Daniels' treatment of Blankenship from October 2006 to January 2007. (PageID 388-93.) These records address follow-up treatment after Blankenship's September 2006 surgery and her condition leading up to another surgery in March 2007, both of which were already documented in the record and reviewed by ALJ Dowd. Although ALJ Dowd noted that Dr. Daniels did not supply examination notes to confirm Blankenship's report of difficulty walking throughout 2006, ALJ Dowd did not question that Blankenship underwent these two surgeries and had difficulty walking and standing between the procedures. (PageID 33.) Importantly, however, these records in fact support ALJ Dowd's and the magistrate judge's conclusions that Blankenship's ability to walk to the hearing room and shop for groceries contradicted Dr. Daniel's letter opinion that Blankenship was unable to walk even short distances. (PageID 33); *Blankenship*, 2014 WL 4801829, at *6 n.4.

Accordingly, the records contained in Exhibit B7F are not so new or material. As such, there is little reason to think that, if this matter were returned to ALJ Dowd, his decision would be any different.

IV.

For the foregoing reasons, we **AFFIRM** the Commissioner's denial of benefits.